IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH SCHULTZ,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>GARY SWARTHOUT,¹ Warden,<br>California State Prison, Solano,<br><br>　　　　　　Respondent. | No. 2:11-cv-00398-JKS<br><br>MEMORANDUM DECISION |

　　　　Keith Schultz, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.  Schultz is currently in the custody of the California Department

of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.

Respondent has answered, and Schultz has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　Schultz was convicted by a Yolo County Superior Court jury of transportation of

methamphetamine (Cal. Health & Safety Code § 11379(a)) and possession of methamphetamine

for sale (Cal. Health & Safety Code § 11378).  The jury also found that Schultz had been

previously convicted of a serious felony (Cal. Penal Code § 667(e)(1)).  In September 2009, the

trial court sentenced Schultz to an aggregate prison term of twelve years.  The California Court

of Appeal, Third Appellate District, affirmed Schultz's conviction in an unpublished decision,²

---

　　　　¹ Gary Swarthout, Warden, California State Prison, Solano, is substituted for Rick Hill, Warden, Folsom State Prison.  Fed. R. Civ. Proc. 25(d).

　　　　² *People v. Schultz*, No. C063099, 2010 WL 3966798 (Cal. Ct. App. Oct. 12, 2010).  The California Court of Appeal did agree with Schultz that the sentence on the possession for sale
(continued...)

and the California Supreme Court denied review on January 12, 2011.  Schultz timely filed his Petition for relief in this Court on February 11, 2011.  Because the facts underlying Schultz's conviction are not relevant to the issues presented on appeal, they are not recited here.

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition Schultz raises two grounds:  (1) the trial court erred in allowing the prosecution's drug expert to testify on the ultimate issue of whether Schultz possessed the methamphetamine for sale; and (2) cumulative error.  Respondent does not assert any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[2](...continued)
count should have been stayed, and remanded the matter to the superior court to modify the sentence accordingly.

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[5] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[7] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[8] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10] Because state court judgments of

---

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[12]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[13] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[14] This Court gives

---

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[12] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[13] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[14] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an
(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[15]

To the extent that Schultz raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[16] It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[17] "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[18] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[19] It does not matter that the state supreme court's statement of the law

---

[14](...continued)
unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[15] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[16] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[17] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[18] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[19] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

was dictum if it is perfectly clear and unambiguous.[20] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[21] This is especially true where the highest court in the state has denied review of the lower court's decision.[22]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[23] "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[24] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[25] "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[26]

---

[20] *Id.* at 76.

[21] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[22] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[23] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[24] *Cooke*, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[25] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[26] *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

IV.  DISCUSSION

Ground 1:  Expert Testimony

During trial a drug expert called by the prosecution testified that in his opinion Schultz possessed the methamphetamine with the intent to sell it.  Schultz contends that admission of this testimony was error because it was based upon the specific facts of Schultz's case, not upon hypothetical facts.  As a backup, in the event that this ground is deemed forfeited on the basis that it was not objected to at trial, Schultz contends his trial counsel was ineffective for failing to renew the objection at trial.  The California Court Appeal, although agreeing that the expert's testimony was presented in an improper form, held that the error was nonetheless harmless and rejected his accompanying ineffective assistance of counsel claim.

> *Testimony Of The Prosecution's Drug Expert*
> [Schultz] next contends that the trial court erred in allowing the prosecution's drug expert to testify that [Schultz] possessed the methamphetamine for sale.  In the alternative, [Schultz] claims counsel rendered ineffective assistance in failing to preserve the issue.  We find no prejudicial error.
> [Schultz] moved in limine to exclude "[t]estimony of any law enforcement officer regarding the issue of whether [[Schultz]] ultimately possessed methamphetamine for the purpose of sale, as charged in count two."  [Schultz] stated two grounds:  "First, any such conclusion is a legal judgment, based on a factual determination of the evidence, which is within the realm and duty of the jury.  Second, in the absence of any foundational evidence regarding the police officer's education, training, experience, or other qualifications to testify as an expert witness on the issue, any such testimony is simply inadmissible lay opinion evidence, and should be excluded under Evidence Code sections 352, 720, 801."
> The court ruled that if an adequate foundation was presented, the opinion of an expert witness based on a hypothetical set of facts would be admissible.  The prosecutor acknowledged that the expert opinion was admissible so long as it was based on a hypothetical.
> Defense counsel signed a "requested stipulation" that the motions in limine would be considered objections made at trial.  The prosecutor did not sign the stipulation.
> West Sacramento Police Officer Eric Angle who had been assigned to the Yolo County narcotics enforcement team testified and explained his training and experience with respect to the identification, sale, and methods of ingestion of

7

methamphetamine. On voir dire, defense counsel questioned Officer Angle about the officer's personal experience in possessing, selling, and using methamphetamine. Without objection, the court ruled Officer Angle was qualified to testify as an expert for purposes of identification of methamphetamine, sale of such drug, and the methods of ingesting the same.

Officer Angle testified generally about the factors he considered which would indicate that a person possessed methamphetamine for sale, the quantities typically used as a single dose, and the cost of different quantities. The prosecutor asked about the facts of the current case, including the seizure of $2,192 in cash.

"[Prosecutor]: And you reviewed the facts of this case with myself, and I think you reviewed them with Officer Lang at the time of the arrest?

"[Officer Angle]: Yes.

"[Prosecutor]: Based on the fact that a person possessed 3.82 grams of methamphetamine, would you be able to form an opinion, in your expert opinion, whether or not that was possessed for sale or possessed for personal use?

"[Officer Angle]: I could. My opinion is that it was possessed for sale.

"[Prosecutor]: What is that opinion based on?

"[Officer Angle]: In this case that opinion is based on the amount of methamphetamine [[Schultz]] possessed, the amount of currency and its denominations that he had in his possession. [¶] The lack of a methamphetamine pipe that, I believe, he spontaneously stated during that time that he smoked methamphetamine. If he smoked methamphetamine he would have a pipe on him or close to him, I would assume, and he also had a prior conviction for being arrested for possession of methamphetamine for sale.

"[Prosecutor]: Does the fact that [[Schultz]] was under the influence or tested positive for methamphetamine change your opinion?

"[Officer Angle]: No.

"[Prosecutor]: Why not?

"[Officer Angle]: Just like I testified earlier, I believe that everyone who uses methamphetamine sells methamphetamine.

"[Prosecutor]: If there was a claim that the cash came from a rental property where someone gave [[Schultz]] cash for rent, would that change your opinion?

"[Officer Angle]: No.

"[Prosecutor]: Why not?

"[Officer Angle]: Well, if he had a receipt for the money, then that's totally [a] separate subject. [¶] It doesn't change the fact that he had a large amount of methamphetamine, that is a lot more than most people have for personal use.

"[Prosecutor]: Would it change your opinion if I told you that there were two cell phones located in his car?

"[Officer Angle]: It might strengthen my opinion. Just based on most people who are either mid level or larger level type drug dealers may have several different phones on them."

Officer Angle opined that 3.82 grams alone was sufficient to support his opinion that the methamphetamine was possessed for sale.

8

Defense counsel posed no objections.

Relying primarily upon *People v. Killebrew* (2002) 103 Cal.App.4th 644, [Schultz] complains that Officer Angle gave more than just an expert opinion based on hypothetical facts, violating the rule that an expert may not testify that a defendant had specific knowledge or possessed a specific intent.

Initially, we consider whether the contention has been forfeited. [Schultz] claims that his motion in limine to exclude the expert's testimony was sufficient to preserve the issue. We disagree.

"'[A] motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context.'" (*People v. Rowland* (1992) 4 Cal.4th 238, 264, fn. 3 .)

[Schultz] sought exclusion of an officer's testimony on [Schultz's] possession for sale on two grounds. First, [Schultz] claimed any such conclusion is a legal judgment, based on a factual determination of the evidence and one for the jury to decide. Although [Schultz's] intent was an issue for the jury, a qualified police officer may give an expert opinion on whether possession of drugs is for the purpose of sale. (*People v. Carter* (1997) 55 Cal.App.4th 1376, 1377-1378.) [Schultz's] second ground was that a witness giving an opinion had to be qualified as an expert and if not, the opinion was inadmissible lay opinion evidence. Here, Officer Angle qualified as an expert. [Schultz] did not question the officer's qualifications and cannot do so now. [Schultz's] motion in limine was insufficient to preserve his claim on appeal that Officer Angle's testimony was improper expert testimony. [Schultz] has forfeited the issue. (Evid.Code, § 353; *People v. Neely* (2009) 176 Cal.App.4th 787, 794-795.)

To avoid forfeiture, [Schultz] challenges counsel's failure to object when the officer testified. To establish ineffective assistance of counsel, [Schultz] must demonstrate that counsel's performance was deficient and that [Schultz] suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Defense counsel's determination whether to object to evidence is a tactical decision which is entitled to substantial deference; "'failure to object seldom establishes counsel's incompetence.'" (*People v. Majors* (1998) 18 Cal.4th 385, 403.)

*Killebrew* concluded that based on the facts of that case, the gang expert's opinion on the defendants' subjective knowledge of the presence of a gun in the car and whether it was jointly possessed was inadmissible. (*People v. Killebrew, supra,* 103 Cal.App.4th at pp. 651-652, 658.) Here, Officer Angle had testified generally about possession of methamphetamine for sale, the factors that indicate sales, and the factors that indicate personal use. Officer Angle identified the amount possessed as the primary factor indicating whether it was possessed for sale or personal use. He

9

testified about a single dose (.1 to .2 grams), daily use (.2 to .5 grams), and that three grams in a day is not usual.

Had defense counsel objected to the particular questions now identified, the objection would have been sustained, but the testimony would not have been excluded but instead would have to have been reframed in hypothetical form. The error in the form of questions that elicited the officer's now objectionable expert testimony was harmless. The questions in hypothetical form and the officer's answers without referring to [Schultz] by name would not have changed the facts that [Schultz] possessed 3.82 grams of methamphetamine along with $2,192 in cash in particular denominations and lacked any drug paraphernalia indicating personal use. [Schultz] has failed to demonstrate that "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*People v. Prieto* (2003) 30 Cal.4th 226, 247.).[27]

Before this Court may grant relief, it must find that any constitutional error was not harmless. Thus, even assuming that the admission of Officer Angle's testimony in the form in which it was introduced also constituted a violation of the Due Process Clause,[28] Schultz is not entitled to relief if its admission was harmless. Specifically, under *Brecht*, this Court must find that the error "had [a] substantial and injurious effect or influence in determining the [outcome]."[29] The determination by a state court that a constitutional error is harmless is itself subject to the "unreasonableness" test of AEDPA.[30] While numerous cases applying *Brecht* refer

---

[27] *Schultz*, 2010 WL 3966798 at *3-5.

[28] A questionable assumption in light of the recent Supreme Court decision applying Federal Rule of Evidence 703 that an expert's opinion need not be based upon "hypothetical questions" to avoid violating the Confrontation Clause, *Williams v. Illinois*, 132 S. Ct. 2221, 2234-35 (2012) (plurality), and its reluctance to place broad constitutional due process restrictions on state evidentiary rulings absent an otherwise applicable specific constitutional guarantee, *see, e.g., McGuire*, 502 U.S. at 72-73; *Crane v. Kentucky*, 476 U.S. 683, 689 (1986); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[29] *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).

[30] *Fry v. Pliler,* 551 U.S. 112, 119-20 (2007).

to the overwhelming evidence of the petitioner's guilt,[31] this tends to overstate the quantum of evidence necessary to establish harmless error under *Brecht*.[32] "Only if the record demonstrates that the jury's decision was substantially influenced by the error or there is grave doubt about whether an error affected a jury will [Schultz] be entitled to relief."[33] In applying *Brecht*, this Court assesses the strength of the state's evidence apart from the erroneously admitted evidence.[34] The Ninth Circuit decision in *Valerio*[35] teaches us that the "substantial and injurious effect or influence" test of *Brecht* presents a higher bar for the state to hurdle than the sufficiency of the evidence test in *Jackson*.[36] Respondent, rather than Schultz, bears the risk of doubt in a *Brecht* harmless error analysis.[37] Thus, Respondent must provide this Court with a "fair assurance" that there was no substantial and injurious effect on the verdict.[38]

Because the proper test is whether the error had a "substantial and injurious effect on the verdict," it is not enough that the form in which the expert's testimony was presented was improper. The critical factor in this context is that the substance of the testimony was not

---

[31] *See e.g., Moses v. Payne*, 543 F.3d 1090, 1100 (9th Cir. 2008); *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008); *Jackson v. Brown*, 513 F.3d 1057, 1082 (9th Cir. 2008); *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007).

[32] *See, e.g., Brecht,* 507 U.S. at 639 (finding harmless error in part because "the State's evidence of guilt was, if not overwhelming, certainly weighty").

[33] *Sechrest v. Ignacio*, 549 F.3d 789, 808 (9th Cir. 2008) (internal quotation marks and citation omitted).

[34] *Sims v. Brown*, 425 F.3d 560, 570-71 (9th Cir. 2005).

[35] *Valerio v. Crawford*, 306 F.3d 742, 761-62 (9th Cir. 2002) (en banc).

[36] *Jackson v. Virginia*. 443 U.S. 307, 319 (1979) (emphasis in the original).

[37] *See O'Neal v. McAninch*, 513 U.S. 432, 439 (1995).

[38] *See Valerio* 306 F.3d at 761-62; *see also O'Neal,* 513 U.S. at 443 ("The State normally bears responsibility for the error that infected the initial trial.").

inadmissible—the same conclusion based upon the same facts could have been presented to the jury in proper form, i.e., hypothetically instead of case specific. Consequently, it cannot be said that its admission had a substantial and injurious effect on the verdict.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Schultz must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[39] A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[40] Schultz must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[41] An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[42] In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule,

---

[39] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[40] *Id*.

[41] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[42] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

the more leeway courts have in reaching outcomes in case-by-case determinations").[43]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[44]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[45]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, *as here, could have supported*, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[46]

In this case, as the California Court of Appeal noted, because the substance of the expert's testimony was not inadmissible and an objection would not have materially altered the substance of the testimony presented to the jury, the error in its form was harmless. Consequently, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

---

[43] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[44] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[45] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[46] *Id.* at 786 (emphasis added).

determination of the facts in light of the evidence presented in the State court proceeding."[47] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Schultz's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable. Schultz is not entitled to relief under this first ground.

Ground 2:  Cumulative Error

In his Amended Petition, as he did before the California Court of Appeal, Schultz contends that even if each of the errors raised on direct appeal taken individually was harmless, the cumulative effect of the multiple errors rendered his trial fundamentally unfair and resulted in a miscarriage of justice. In rejecting Schultz's arguments, the California Court of Appeal held:

> *Cumulative Error*
> Relying primarily upon *People v. Hill* (1998) 17 Cal.4th 800, [Schultz] argues cumulative error requires reversal. We disagree.
> Here, we have concluded:  (1) the court did not abuse its discretion in admitting [Schultz's] prior conviction for possession of methamphetamine for sale; (2) no prejudicial error in the form of questioning/responses of the prosecutor's expert witness; (3) no abuse of discretion in finding Hirsch not qualified to give an expert opinion on intent to sell; and (4) no coercive conduct by the trial court when the jury declared it was deadlocked on count 2. Thus, there was no cumulative prejudicial error requiring reversal. (See *People v. Martinez* (2010) 47 Cal.4th 911, 959.).[48]

Other than the admission of the expert's testimony *vis-a-vis* intent, Schultz has not properly raised any issue before this Court.[49] Consistent with the rule that prisoner *pro se*

---

[47] 28 U.S.C. § 2254(d).

[48] *Schultz*, 2010 WL 3966798 at *9.

[49] In his initial Petition Schultz raised five of the grounds he raised on direct appeal:  (1)
(continued...)

14

pleadings are given the benefit of liberal construction,[50] and in order to adequately address Schultz's cumulative error claim, this Court must nonetheless examine the other three grounds raised on direct appeal—that the trial court: (1) failed to "sanitize" the nature of his prior drug conviction for possession of methamphetamine for sale; (2) erred in finding that a defense witness did not qualify as an expert; and (3) improperly coerced the jury verdict.[51] The California Court of Appeal addressed and rejected each of these issues on the merits.

*Prior Drug Conviction*.

Schultz did not challenge the use of a prior conviction for impeachment, only how it was described.[52] The California Court of Appeal rejected Schultz's claim, holding:

> The record does not support [Schultz's] claim of an abuse of discretion. Credibility was critical in this case because the issue was whether [Schultz] possessed the methamphetamine for personal use or sale. The trial court could reasonably have determined the jury was entitled to know the nature of the prior drug conviction in order to accurately judge [Schultz's] credibility. Sanitization may have led the jury to conclude that [Schultz's] crime was especially egregious for the trial

---

[49](...continued)
the trial court erred in failing to sanitize Schultz's prior conviction; (2) trial court error in admitting the drug expert's testimony [first ground in the Amended Petition]; (3) error denying the testimony of a drug counselor as an expert; (4) that the trial court coerced the jury into finding guilt; and (5) cumulative error [second ground in the Amended Petition]. The Amended Petition superceded and replaced the original Petition, rendering it of no further force or effect. 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ., § 1476 (2d ed.); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Loux v. Ray*, 375 F.2d 55, 57 (9th Cir. 1967). Accordingly, the only issues properly before this Court are those raised in the Amended Petition.

[50] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

[51] *Schultz*, 2010 WL 3966798 at *1.

[52] *Id.* at *2.

court not to have identified it. The jurors were thus able to decide for themselves how to factor [Schultz's] prior drug conviction into an evaluation of his credibility.[53]

Under Federal evidentiary rules a trial court must weigh the probative value of the nature of a prior conviction to a contested issue against its prejudicial effect.[54] In so doing, the trial court is given significant latitude and its rulings are reviewed for an abuse of discretion.[55] Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[56] the Supreme Court has never held that an abuse of discretion is an appropriate basis for granting federal habeas relief. Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[57] Thus, because no constitutional basis for "sanitizing" the testimony has been asserted or is otherwise apparent, Schultz has failed to present a question of constitutional dimension.

*Qualification of Defense Witness as an Expert.*

The trial court denied defense counsel's request to qualify the drug counselor who treated Schultz as an expert witness and to have her offer an opinion as to the amount of drugd Schultz possessed and whether it was possessed for sale or personal use. Noting that under California

---

[53] *Id.* at *3.

[54] *See* Fed. R. Evid. 403, 404.

[55] *Old Chief v. United States*, 519 U.S. 172, 174 n.1, 182-83 (1997).

[56] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[57] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1).").

law, the rulings on the qualifications of witnesses are reviewed for an abuse of discretion, the California Court of Appeal found no abuse of discretion in limiting the testimony of the counselor to her experience on the use and possession of methamphetamine, but not its sale.[58]

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his or her defense.[59] However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."[60] States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials.[61] "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate."[62] Like California, under federal law the decision of the trial court on the admissibility of an expert opinion is reviewed for an abuse of discretion.[63] Thus, this argument also fails to present a question of constitutional magnitude.

*Jury Coercion*.

The California Court of Appeal, after reciting the facts, rejected Schultz's argument:

---

[58] *Schultz*, 2010 WL 3966798 at *7.

[59] *See Washington v. Texas*, 388 U.S. 14, 19 (1967).

[60] *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).

[61] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

[62] *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

[63] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997).

At 4:10 p.m. on July 8, 2009, the jury retired to begin deliberations.

At 3:26 p.m. on July 9, 2009, the jury announced that it had reached a verdict on count 1 (transportation of methamphetamine) but was deadlocked on count 2 (possession of methamphetamine for sale). The court queried whether further deliberations would result in a verdict. The foreperson responded, "In my personal opinion, no." The court asked whether there was anything the court could do to assist the jury in reaching a verdict, such as rereading instructions. The foreperson responded, "There seems to be [a] question on more definition on intent to sell." The court interrupted, again suggesting rereading of testimony or further argument by counsel. The foreperson asked whether the jury could "caucus amongst [them]selves to ask those individuals" whether rereading or argument would assist. The court then polled the jury, asking each juror whether it was reasonably probable that they would reach a verdict with further deliberations and each answered negatively. When asked about the number of votes, the foreperson stated that they had taken three votes. When asked about the numerical splits, the foreperson responded in writing but the record on appeal does not reflect the splits. The court reviewed the numbers and asked the jury to return to the jury room and discuss whether there was anything it needed to assist them. After the jury was excused, defense counsel asked to see the numerical splits.

About 5:00 p.m., the jury returned to the courtroom and the foreperson requested that the court reread the instruction on bias and that the prosecutor further argue on the issue of intent to sell. The court determined that it would further instruct and that both counsel would argue the next morning. The court then adjourned for the day, excusing the jury. Defense counsel raised no objection.

The next morning, the jury reached a verdict without further instruction and argument. After the fact, defense counsel objected to further argument and to the jury continuing its deliberations but conceded the point was moot.

The only basis for [Schultz's] claim of coercion is that the jury was ordered to continue to deliberate despite each juror's assurance that further deliberation would not be fruitful. [Schultz] characterizes this as "inadvertent coercion."

"Under [Penal Code] section 1140, the trial court is precluded from discharging the jury without reaching a verdict unless both parties consent or 'unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' . . . '[T]he determination whether there is reasonable probability of agreement rests in the sound discretion of the trial court. [Citation.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]'" (*People v. Sheldon* (1989) 48 Cal.3d 935, 959.)

"Coercion has been found where the trial court, by insisting on further deliberations, expressed an opinion that a verdict should be reached." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 775.)

Here, the court did not say anything to suggest that the minority had to compromise and change in order to reach a verdict. The court asked twice whether

18

additional instruction and argument would be helpful. After seeing the three splits, the court concluded the same would be helpful despite the jurors indicating otherwise. The record does not reflect the splits. Rather than conveying to the jury that it must deliberate until a verdict was reached, the court made suggestions in hopes of assisting the deliberations. Further, after the court stated that it would further instruct and have counsel argue, the jury reached a verdict the next morning without benefit of instruction or argument. Thus, the jury continued its deliberations, focusing on the evidence. The trial court did not coerce the verdict.[64]

Federal courts review a trial judge's decision not to declare a mistrial because of a jury deadlock for an abuse of discretion.[65] Indeed, a jury's statement that it is deadlocked is not sufficient by itself to warrant a mistrial.[66] In this case, because the trial court did not provide any further instruction to the jury prior to the jury reaching its decision, the trial gave no supplemental instruction that might be considered coercive.[67] In this case, by no amount of linguistic gymnastics could one find that the action taken by the trial court was coercive, whether denominated deliberate or inadvertent.

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."[68] This Court has considered and rejected each of the errors Schultz seeks to cumulate as not raising a constitutional issue. Furthermore,

---

[64] *Schultz*, 2010 WL 3966798 at *8-9.

[65] *United States v. Banks*, 506 F.3d 756, 770 (9th Cir. 2007) (citing *United States v. Allen*, 341 F.3d 870, 891 (9th Cir. 2003); *United States v. Green*, 962 F.2d 938, 944 (9th Cir. 1992)); *United States v. Cawley*, 630 F.2d 1345, 1348-49 (9th Cir. 1980).

[66] *Green*, 962 F.2d at 944 (citing *United States v. Sommerstedt*, 752 F.2d 1494, 1498 (9th Cir.), *amended*, 760 F.3d 999 (9th Cir. 1985)).

[67] *See, e.g., United States v. Williams*, 547 F.3d 1187, 1206-07 (9th Cir. 2008) (finding coercion under the facts presented where the trial court gave a supplemental charge under *Allen v. United States*, 164 U.S. 492, 501 (1896)).

[68] *Peyton v. Cullen,* 658 F.3d 890, 896-97 (9th Cir.2011) (citing *Chambers v. Mississippi,* 410 U.S. 284, 298, 302-03 (1973)).

even if it were error under state law, this Court cannot say Schultz's trial was rendered fundamentally unfair.[69] Schultz is not entitled to relief under his second ground.

## V. CONCLUSION AND ORDER

Schultz is not entitled to relief on either ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[70] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[71]

The Clerk of the Court is to enter judgment accordingly.

Dated: November 14, 2012.

                                        /s/ James K. Singleton, Jr.
                                        JAMES K. SINGLETON, JR.
                                        United States District Judge

---

[69] *Peyton*, 658 F.3d at 897.

[70] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[71] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.